UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES HOLDER,

        Petitioner,                      Case No. 1:17-cv-408

v.                                        Honorable Paul L. Maloney

SHANE JACKSON,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.   Factual allegations

Petitioner James Holder is presently incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility. Petitioner is serving a sentence of 3 years to 5 years following his May 6, 2015, plea of guilty to a charge of domestic violence, third-offense, MICH. COMP. L. § 750.81(5), in the Kent County Circuit Court. The court sentenced Petitioner on June 15, 2015.

At Petitioner's sentencing hearing, Judge George J. Quist reviewed the facts relating to Petitioner's offense to determine an Offense Variable score under the Michigan Sentencing Guidelines. Some of the relevant facts had been admitted by Petitioner when he entered his plea. Judge Quist made factual findings with respect to the other relevant facts. Petitioner contends that, based on the facts that he admitted, his Guidelines minimum sentence range would have been 10 to 23 months. With the additional facts found by Judge Quist, the guidelines minimum sentence range increased to 19 to 38 months.

Six weeks after Petitioner was sentenced, the Michigan Supreme Court issued its decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). In *Lockridge*, in a 5-2 decision, the Michigan Supreme Court held that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence and are unconstitutional under *Alleyne v. United States,* 570 U.S. ___, 133 S. Ct. 2151 (2013). *Lockridge*, 870 N.W.2d at 506. As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. *Id.* at 520-521.

Petitioner raised the *Lockridge* issue on appeal.  The Michigan Court of Appeals denied leave to appeal on January 22, 2016.  Petitioner sought leave to appeal in the Michigan Supreme Court.  On June 28, 2016, the supreme court remanded the case to the Kent County Circuit Court to permit Judge Quist to determine whether he would impose a different sentence in light of *Lockridge's* elimination of the sentencing guidelines mandate.  On September 21, 2016, Judge Quist entered an opinion and order reaffirming the initial sentence.  Petitioner has not sought leave to appeal that decision.  Instead, Petitioner has timely filed his habeas petition raising the same issue he raised in the state appellate courts:  Petitioner's sentence violates the Sixth and Fourteenth Amendment because it was enhanced by judicially-found facts that were not admitted by Petitioner.  (Am. Pet., ECF No. 8, PageID.24.)

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

4

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.     Petitioner's sentence does not violate the Sixth or Fourteenth Amendments

Petitioner contends that the sentence is unconstitutional because it is based on facts found by the judge when the Sixth Amendment requires that it be based only on facts found by the jury or admitted by Petitioner. Petitioner misconstrues the constitutional requirement.

Petitioner bases his argument on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), continuing with *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), then ending with *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated Sixth Amendment rights, and reiterated the rule that any fact that

increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

The Supreme Court expanded the *Blakely* reasoning to mandatory minimum sentences in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013). Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013), *rev'd* 870 N.W.2d 561 (2015). The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme

Court precedent.  *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .) (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

Shortly after Petitioner was sentenced, however, *Lockridge*, 870 N.W.2d at 502  the Michigan Supreme Court considered the question the Michigan Court of Appeals had faced in *Herron* and reached the opposite conclusion.  The Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review.  This Court may consider only the "clearly established" holdings of the United States Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  For the same reasons, it may not consider the holdings of state courts.  Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists could and did disagree about whether *Alleyne* applied to the calculation of Michigan's

7

minimum sentencing guidelines.  *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief.

Even if it could be said that the decision in *Alleyne,* as applied to the Michigan sentencing scheme, and as that scheme was interpreted by the *Lockridge* court, represented "clearly established" federal authority for purposes of collateral habeas corpus review, Petitioner could not prevail.  The judicial fact-finding to which Petitioner now objects had no bearing on the determination of Petitioner's guidelines minimum range.  Thus, *Alleyne* does not apply here.  From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the sentencing court's exercise of discretion violates the Sixth Amendment.

The distinction is apparent in the remedy adopted to correct the constitutional infirmity in mandatory minimum guidelines sentencing schemes.  In *Lockridge*, the Michigan Supreme Court determined it could eliminate the Sixth Amendment problem by making the guideline minimum range advisory and the minimum sentence a matter for the court's discretion. That was the same remedy the United States Supreme Court had adopted previously in *Booker*, 543 U.S. at 245.  The *Booker* court reasoned that if the sentencing rules were not mandatory and did not impose binding requirements on sentencing judges "the statute falls outside the scope of *Apprendi's* requirement."  *Booker*, 543 U.S. at 259.

After *Lockridge*, a trial court's imposition of a sentence, no matter how it may be guided by the sentencing guidelines, represents an exercise of the court's discretion.  The facts found to support the exercise of that discretion do not "increase[ ] the penalty for the crime beyond the prescribed statutory maximum[,]" *Apprendi*, 530 U.S. at 490, or "increas[e] the mandatory minimum[,]" *Alleyne*, 133 S.Ct. at 1260, and therefore need not "be submitted to a jury, [or be]

8

proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Petitioner's sentence following remand was imposed after the decision in *Lockridge* for the express purpose of overcoming the Sixth Amendment problem recognized in *Lockridge*.  The trial court decided that it would, in the free exercise of its discretion, impose the same sentence.  Facts the trial court may have found in support of its exercise of discretion do not implicate the Sixth Amendment.  Petitioner has failed to demonstrate that the state court's decision with regard to his discretionary sentence is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990; *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989; *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: July 28, 2017                    /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge